UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYCHAL REED, CDCR #AE-9821<br><br>Plaintiff,<br><br>vs.<br><br>A. BUCKEL, S. STEADMAN, T. MARTINEZ, B. COLON,<br><br>Defendants. | Case No.: 3:24-cv-0179-MMA (AHG)<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1)**<br><br>**[Doc. No. 11]** |

## I. INTRODUCTION

Mychal Reed ("Plaintiff" or "Reed"), an inmate proceeding pro se, is pursuing a civil rights complaint under 42 U.S.C. § 1983. On May 14, 2024, the Court granted Reed's request to proceed *in forma pauperis* ("IFP") and dismissed his original complaint for failure to comply with Rule 8 of the Federal Rules of Civil and failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Doc. No. 10. The Court granted Plaintiff leave to file an amended complaint and he did so on June 11, 2024. Doc. No. 11. For the reasons discussed below, the Court dismisses the FAC for failure to state a claim.

///

1

## II. Screening Pursuant To 28 U.S.C. § 1915(e) and § 1915A(b)

### A. Legal Standards

As discussed in this Court's previous screening order, 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b) require the Court to screen Plaintiff's FAC and *sua sponte* dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (*en banc*); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires that a complaint to "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id*. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 40 U.S. 386 U.S. 386, 393–94 (1989) (internal quotation marks omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

/ / /

/ / /

### B. Plaintiff's Allegations

Reed is a deaf inmate. Doc. No. 11 at 3. In his FAC, he alleges that on September 23, 2021, while he was confined at Richard J. Donovan Correctional Facility "(RJD)", he was placed in administrative segregation for "allegedly causing another inmate 'serious injuries.'" *Id.* at 3. Reed contends a rule violation report ("RVR") was issued after the incident, which was "a fraudulent—false report." *Id.* Prior to the hearing on the RVR, Reed requested that an "investigative employee" and a "staff assistance" be assigned to assist him in with preparing for the hearing. *Id.* at 5. On October 7, 2021, Correctional Officer Colon was assigned to be Reed's "investigative employee," but no one was assigned to act as Reed's staff assistant.[1] Plaintiff alleges Colon "refused to communicate with [him] via [American Sign Language] and/or written notes," and "mocked" Reed's deafness. *Id.* Plaintiff states that Colon generated a "false report" containing "false statements" about the incident. *Id.* Reed refused to sign Colon's report. *Id.*

At some point after the RVR was issued (but before the hearing was held), Plaintiff told Associate Warden Buckel that the report was "fraudulent." *Id.* at 3. Buckel told Plaintiff she would "investigate his claims and get back with him," but she never did. *Id.*

On November 4, 2021, a hearing was held on the RVR and Reed was found guilty. *Id.* Reed was "not allowed to attend the hearing" and states he was not even informed of it until December 6, 2021, over a month later. *Id.* at 4. As a result of the guilty finding, Reed was transferred to California Correctional Institution ("CCI), a "Level IV" prison.

---

[1] Under California Code of Regulations, Title 15, "[a]n incarcerated person shall be assigned an employee to assist in the investigation of matters pertaining to a disciplinary action" under certain circumstances. Cal. Code Regs. tit. 15, § 3315(d). An "investigative employee" may be appointed when the issues are complex, housing status hinders the inmate's ability to collect evidence, and/or additional information is necessary for a fair hearing. *Id.* at § 3315(d)(1)(A). A "staff assistant" is assigned to an inmate the inmate is illiterate or non-English speaking, when the issues are so complex as to require assistance, and/or the inmate's disability makes it necessary for assistance in order to participate in the disciplinary process. Cal. Code Regs. tit. 15, § 3315(d)(2)(A).

*Id.* at 3. While confined at CCI, Plaintiff was assaulted by "gang members" and seriously injured. *Id.* at 4.

Reed alleges Lieutenant Martinez and Associate Warden Steadman "generated and approved" a false report of the disciplinary hearing results. *Id.* at 4. For instance, Plaintiff points to a portion of the report which states that he "waived the Investigative Employee" and that "during the hearing Reed confirmed he did not need an Investigative Employee" (*see* Doc. No. 11-1 at 15), while Plaintiff insists he requested an investigative employee on October 7, 2021 and he did not attend the RVR hearing.[2] *Id.* at 4; *see also* Doc. No. 11-1 at 11.

**C.  Discussion**

In his FAC, Reed names four defendants—A. Buckel, S. Steadman, T. Martinez, and B. Colon. Doc. No. 11 at 2. He alleges all four Defendants violated his rights under the Due Process Clause of the Fourteenth Amendment, and the Eighth Amendment. *Id.* at 3–5. He also alleges Colon violated his rights under the Americans with Disabilities Act ("ADA"). *Id.* at 5. He seeks money damages and restoration of "32 points [of] bad credits." *Id.* at 7.

*1.  Due Process*

Reed alleges Buckel, Steadman, Martinez and Colon violated his right to due process when he was confined to administrative segregation based on a "false" RVR, and after a hearing he was "was not allowed to attend." *Id.* at 4. The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974);

---

[2] Another section of the RVR report states that Reed "elected not to participate" in the RVR hearing. (*see* Doc. No. 11-1 at 14), while Reed maintains that he was not informed of the hearing until well after it was held. Doc. No. 11 at 4. Yet another portion of the RVR report suggests Reed attended the hearing but "declined to make a statement." Doc. No. 11-1 at 17. But on that same page, the report also states Reed "refus[ed] to attend the hearing." *Id.*

*Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "A due process claim is cognizable only if there is a recognized liberty or property interest at stake." *Coakley v. Murphy*, 884 F.2d 1218, 1220 (9th Cir. 1989). A liberty interest may arise from the Constitution itself, or from an expectation or interest created by state law or prison regulations. *See Wilkinson*, 545 U.S. at 221; *Sandin v. Conner*, 515 U.S. 472, 484 (1995). With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. *Sandin*, 515 U.S. at 481–84. Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. If a liberty interest is at stake, an inmate is entitled to certain procedural protections.[3] *Id.* at 482.

Here, Reed has failed to state a due process claim against any Defendant because he has not plausibly alleged his confinement to the Administrative Segregation Unit amounted to an atypical and significant hardship sufficient to create a liberty interest. Determining whether a prison condition is "atypical and significant" requires review of the specific facts of each case. *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996). Courts look to three factors in considering the issue: (1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; (2) the duration of the condition and the degree of restraint imposed; and (3) whether the state's

---

[3] With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. *Wolff*, 418 U.S. at 563–71.

1 action will invariably affect the duration of the prisoner's sentence. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).

In his FAC, Reed states that as a result of being found guilty of the RVR, he was confined to administrative segregation for a total of nine months and subsequently transferred to a Level IV facility.[4] Doc. No. 11 at 3. "Typically, administrative segregation in and of itself does not implicate a protected liberty interest." *Id.*; *see also May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (stating "the Ninth Circuit explicitly has found that administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence"); *Bryant v. Cortez*, 536 F. Supp. 2d 1160, 1167 (C.D. Cal. 2008) (stating "[n]either the degree nor the duration of the restraint imposed by administrative segregation gives rise to a protected liberty interest[,]" and finding no such interest implicated based on 18-month confinement to administrative segregation); *Smart v. Ortiz*, No. 17-cv-1454-AJB-BGS, 2018 WL 3752326, at *8 (S.D. Cal. 2018) (finding no liberty interest based on nine-month confinement to administrative segregation as the result of a disciplinary hearing). Here, Reed fails to allege the conditions of his nine-month confinement to administrative segregation amounted to an atypical and significant

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

---

[4] Reed states he was placed in administrative segregation on September 25, 2021, shortly after an alleged altercation with another inmate, which provided the basis for the rule violation. Doc. No. 11 at 3. Reed released from administrative segregation on May 5, 2022, when he was transferred to another prison. *Id.*

hardship.[5]  Therefore, he has not alleged his confinement there gave rise to a protected liberty interest.

Furthermore, prisoners have no constitutionally-protected interest under the Due Process Clause in avoiding transfer to another prison.  *See Olim v. Wakinekona*, 461 U.S. 238 (1983); *see Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (finding that due process procedural protections were not triggered where prisoner was reassigned out of a vocational course and transferred to a different prison).  "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221.  Therefore, Plaintiff has not alleged a due process violation based on his transfer to a "Level IV" prison.

In sum, Plaintiff has failed to plausibly allege the existence of a protected liberty interest and as such, the Court **DISMISSES** his Fourteenth Amendment due process claims against all Defendants.  *See* 28 U.S.C. § 1915(e)(2) and § 1915A; *Iqbal*, 556 U.S. at 678, 686.

/ / /

/ / /

---

[5] Reed also states he was assessed "32 points bad credit," as a result of the RVR. Doc. No. 11 at 7.  It is unclear if this loss of "credits" affected the duration of his sentence, or just his classification score.  *See* Doc. No. 11-1 at 26.  If the duration of Plaintiff's sentence was impacted, he cannot state a due process claim.  When a prisoner raises a constitutional challenge which could entitle him to an earlier release, his sole federal remedy is a writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475 (1973); *Young v. Kenny*, 907 F.2d 874 (9th Cir. 1990).  Moreover, when seeking damages for an allegedly unconstitutional conviction or imprisonment, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Heck v. Humphrey*, 512 U.S. 477, 487–88 (1994).  "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." *Id*. at 488.  This "favorable termination" requirement has been extended to actions under § 1983 that, if successful, would imply the invalidity of prison administrative decisions which result in a forfeiture of good-time credits. *Edwards v. Balisok*, 520 U.S. 641, 643–647 (1997).

2. *Eighth Amendment*

Next, Plaintiff alleges Defendants violated his Eighth Amendment rights by confining him to administrative segregation. *See* Doc. No. 11 at 3–5. To state a claim under the Eighth Amendment, Plaintiff must plausibly allege he was incarcerated under conditions posing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In addition, Reed must sufficiently allege Defendants were deliberately indifferent to the substantial risk of serious harm. Deliberate indifference exists when an official knows of and disregards a condition posing a substantial risk of serious harm or when the official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws the inference. *Id*. at 837.

Here, the FAC is devoid of any facts describing the conditions of Plaintiff's confinement to administrate segregation, much less conditions that created a substantial risk of serious harm. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (stating only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). Reed also fails to allege any facts to show any individual Defendant acted with deliberate indifference to such a risk. *See Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) ("[A] prisoner must set forth specific facts as to each individual defendant's deliberate indifference."). Therefore, the Court **DISMISSES** Reed's conclusory Eighth Amendment claims against Buckel, Steadman, Martinez, and Colon for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b)(1).

3. *Americans with Disabilities Act*

Finally, Reed alleges Defendant Colon violated his rights under the ADA when he failed to communicate with Reed via ASL and/or written notes during his investigation. Doc. No. 11 at 5. To state an ADA claim, a plaintiff must allege: "(1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or

activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability." *Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1060 (9th Cir. 2007) (internal quotations omitted).

First, to the extent Reed sues Colon in his individual capacity (*see* Doc. No. 11 at 2), he fails to state a claim. The ADA does not provide a basis to sue government officials in their individual capacities. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (stating a plaintiff cannot sue state officials in their individual capacities to vindicate rights created by Title II of the ADA); *Burgess v. Carmichael*, 37 F. App'x 288, 292 (9th Cir. 2002) ("Plaintiffs may sue only a 'public entity' for [ADA] violations, not government officials in their individual capacities"); *Rines v. Riverside Cty. Jails Sheriffs*, 2019 WL 6916005, at *11 (C.D. Cal. 2019) (stating "a plaintiff cannot sue an official in his or her individual capacity under the ADA. . ..").

Furthermore, the proper defendant in an ADA action is the public entity responsible for the alleged discrimination, not an individual officer. *Everson v. Leis*, 556 F.3d 484, 501 & n. 7 (6th Cir. 2009); *see also Lovell v. Chandler*, 303 F.3d 1039, 1051 (9th Cir. 2002) (concluding state entities can be sued for money damages under Title II of the ADA). The term "public entity," as encompassed by Title II of the ADA, includes state prisons. *Pa. Dep't. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

Finally, the Court notes that while Reed alleges Colon failed to communicate with him via written notes, the exhibits he attaches to his FAC and which references as support, indicate Reed provided Colon with written questions prior to the hearing and the RVR supplemental report prepared by Colon includes those questions (and written answers). *See* Doc. No. 11-1 at 5, 31. The Court need not "accept as true allegations that contradict exhibits attached to the [c]omplaint." *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). As such, even if Colon were a proper defendant, as currently pleaded, the FAC would fail to state an ADA claim.

///

9

Accordingly, the Court **DISMISSES without prejudice** Reed's ADA claim against Colon for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1).

### 4. Leave to Amend

Given Plaintiff's pro se status, the Court grants him one final opportunity to amend his complaint, as to his ADA claim only, to sufficiently allege a claim if he can. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal quote marks omitted). The Court declines to grant leave to amend his Eighth Amendment and Due Process claims because amendment would be futile. *See Schmier v. U.S. Court of Appeals for the Ninth Circuit*, 279 F.3d 817, 824 (9th Cir. 2002) (recognizing "[f]utility of amendment" as a proper basis for dismissal without leave to amend).

### III. CONCLUSION AND ORDER

For the reasons set forth above, the Court hereby:

1. **DISMISSES** Plaintiff's Fourteenth Amendment and Eighth Amendment claims **with prejudice and without leave to amend** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b)(1).

2. **DISMISSES** Plaintiff's American with Disabilities Act claim **without prejudice and with leave to amend** based on a failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b)(1).

3. **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file a Second Amended Complaint, as to his ADA claim only, which cures the deficiencies of pleading noted in this Order. Plaintiff's Second Amended Complaint must be complete by itself without reference to any previous version of his pleading; Defendants not named and any claims not re-alleged in the Second Amended Complaint will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Lacey v. Maricopa County*,

693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled"); *Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989).  If Plaintiff fails to timely amend, the Court will enter a final Order dismissing this civil action.  *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

**IT IS SO ORDERED.**

Dated: October 24, 2024

_____
HON. MICHAEL M. ANELLO
United States District Judge